UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LAURA TURPIN HALL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 2:07CV46 JCH |
| | ) |
| W.W. TRANSPORT, INC., | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| GEM CITY FORD, INC. and | ) |
| RICK'S TRANSIT REPAIR, INC., | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Third-Party Defendant Rick's Transit Repair, Inc.'s ("Rick's Transit") Motion to Dismiss Third-Party Plaintiff W.W. Transport, Inc.'s Third-Party Complaint pursuant to Rule 12(b)(2) ("Motion to Dismiss"), filed June 30, 2008. (Doc. No. 28). The matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Sometime prior to September 29, 2001, original Plaintiff Laura Hall and her husband, Danny Hall ("Decedent") met with Dennis Phillips ("Phillips"), an employee of Third-Party Defendant Gem City Ford, Inc. ("Gem City"), about purchasing a vehicle for the Halls to use in their dog breeding and wholesale business. (Third-Party Complaint ("Complaint" or "Compl."), ¶ 9). The Halls gave Phillips very general specifications for the vehicle, including that it should be a van with a cargo box

---

[1] The Court's background section is taken from Third-Party Plaintiff W.W. Transport, Inc.'s ("W.W. Transport") Third-Party Complaint, to which Rick's Transit has not yet filed an Answer.

in which puppies would be housed during transport, and that the cargo box had to have a separate heating and cooling device. (Id.).

After meeting with the Halls, Phillips arranged for contracts to be entered into between Gem City and certain vendors, for the vendors to make modifications to the van to meet the Halls' needs. (Compl., ¶ 11). Gem City purchased a used fuel tank to be installed on the van as an auxiliary fuel tank. (Id., ¶ 12). The extra fuel tank was to carry gasoline to run the generator that would supply the electrical power necessary to run the separate heating and air conditioning units for the cargo box. (Id.).

Gem City entered into a contract with Rick's Transit[2], for Rick's Transit to install the extra fuel tank. (Compl., ¶ 13). Rick's Transit installed the extra gas tank between the frame rails of the van and behind the original fuel tank, which was located behind the rear axle. (Id., ¶ 14). In that position, the extra fuel tank was located in the rear crush zone of the van; in other words, it was in an area of the van that would be crushed by a rear impact from an impacting vehicle traveling at speeds of 30 to 50 miles per hour. (Id., ¶ 15). Furthermore, the extra fuel tank was installed in a "hostile environment," in that it was fastened to the frame rails with sharp edged brackets and bolts that could puncture or rip the tank apart if crushed. (Id., ¶ 16).

On September 29, 2001, Gem City sold the van with the extra fuel tank to the Halls. (Compl., ¶ 18). On August 27, 2007, Decedent was operating the van going westbound on Highway 36 in Macon County, Missouri. (Id., ¶ 20). At that time, Decedent was either stopped, or moving very slowly as a result of traffic backed up by an accident ahead. (Id.). A tractor-trailer operated by a driver and employee of W.W. Transport, Matt Engen ("Engen"), struck the rear of Decedent's van

---

[2] Rick's Transit is a corporation organized under the laws of the state of Illinois, with its principal place of business in Quincy, Illinois. (Compl., ¶ 4).

at a speed of somewhere between 30 and 50 miles per hour, and the impact caused the extra fuel tank to be crushed and to rotate. (Id., ¶¶ 21-23). While the extra fuel tank was rotating, it was ripped open by the brackets and bolts used to fasten it to the frame rail. (Id., ¶ 23). Gasoline then spilled out of the extra fuel tank and ignited, causing the van to burst into flames. (Id., ¶ 24). Decedent was trapped in the van, and died as a result of injuries he sustained in the fire. (Id., ¶ 25).

On or about October 16, 2007, original Plaintiffs Laura Hall, Lorie Bryan, Rick Hall, and Leeanett Phillips ("Plaintiffs") filed suit against W.W. Transport and Engen. (Compl., ¶ 26). Plaintiffs and W.W. Transport eventually entered into a settlement agreement, wherein W.W. Transport and Engen agreed to pay Plaintiffs $5,000,000.00, in exchange for Plaintiffs' complete release and extinguishment of any claim Plaintiffs had against W.W. Transport, Engen, and any person or entity who may have been liable in tort to Plaintiffs as a result of Decedent's death. (Id., ¶ 30).

W.W. Transport filed the instant Third-Party Complaint against Gem City and Rick's Transit on June 5, 2008. (Doc. No. 23). In its Complaint, W.W. Transport seeks contribution from both Gem City and Rick's Transit, based on Strict Liability-Product Defect, Strict Liability-Failure to Warn, and Negligent Design/Negligent Failure to Warn. (Compl., Counts I-VI). As stated above, Rick's Transit filed the instant Motion to Dismiss on June 30, 2008. (Doc. No. 28). Specifically, Rick's Transit maintains W.W. Transport's Complaint against it must be dismissed, as this Court lacks personal jurisdiction over Rick's Transit.

## **DISCUSSION**

As stated above, in its Motion to Dismiss Rick's Transit contests whether this Court properly may exercise personal jurisdiction over it. In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

A federal court engages in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant committed one of the acts enumerated in the state long-arm statute. Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D.Mo. 1995) (citations omitted). If so, then the court must determine, "whether the exercise of personal jurisdiction over [the] defendant comports with the Due Process Clause of the Fourteenth Amendment." Id. (citations omitted).

The Eighth Circuit has held that, "[n]onresidents are subject to personal jurisdiction to the extent that state law allows." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citation omitted). "Missouri liberally construes the provisions of its long-arm statute in order to exercise its jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute." City Merchandise, 176 F.Supp.2d at 955 (internal quotations and citations omitted); see also Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir. 1984); Peabody Holding Co., Inc. v. Costain Group PLC, 808 F. Supp. 1425, 1432 (E.D. Mo. 1992) (internal quotations and citation omitted) ("The legislature, in enacting this statute, sought to extend the jurisdiction of Missouri courts to numerous classes of out-of-state defendants who could not have been sued in Missouri under the preexisting law."). "As such, 'the examination of whether Missouri's long-arm statute has been satisfied is

coextensive with whether the assertion of personal jurisdiction over the defendant meets the requirements of due process, and the analysis is collapsed into the single question of whether asserting jurisdiction violates the Due Process Clause.'" Meredith, Inc. v. Marketing Resources Group of Oregon, Inc., 2005 WL 2334294 at * 2 (E.D. Mo. Sep. 23, 2005), quoting Bell v. Imperial Palace Hotel/Casino, Inc., 200 F.Supp.2d 1082, 1085 (W.D. Mo. 2001).

In analyzing whether a party's contacts with the forum comport with the dictates of constitutional due process, the Eighth Circuit has held as follows:

> The Due Process Clause requires that minimum contacts exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there[3], and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090-91 (8th Cir. 2008) (internal quotations and citations omitted).

In this circuit, the due process standard has been expressed as a consideration of five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Miller, 528 F.3d at 1091 (internal quotations and citations omitted). The first three factors are primary considerations, while the latter two are secondary. Norrise v. Union Pacific R. Co., 2008 WL 2859155 at *3 (E.D. Mo. Jul. 23, 2008) (citation omitted).

---

[3] In other words, the defendant's contacts with the forum state must be more than "random," "fortuitous," or "attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted).

With respect to the third factor, courts distinguish between general jurisdiction and specific jurisdiction. Miller, 528 F.3d at 1091. "General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities." Norrise, 2008 WL 2859155 at *4 (internal quotations and citations omitted); see also Miller, 528 F.3d at 1091.

In the instant case, the Court finds the nature, quality, and quantity of Rick's Transit's contacts with the forum state were significant. For example, it is undisputed that between 2001 and 2006, Rick's Transit sent invoices to Missouri billing addresses a total of two-thousand eighty-nine times. (See W.W. Transport Inc. and Rick's Transit Repair, Inc.'s Joint Stipulation, ¶ 2). Rick's Transit further has at least seventy-seven Missouri-based customers, including at least five regular customers located in Canton, Missouri. (See Rick's Transit's Reply, P. 5; W.W. Transport's Response, PP. 2-3). Furthermore, Rick's Transit traveled to Missouri a total of fifty-six times between 2001 and 2006, to repair or service a semi-truck or other vehicle. (Joint Stipulation, ¶ 4). Rick's Transit does not dispute W.W. Transport's assertion that it has purchased truck parts and supplies from multiple suppliers in Missouri, and that it regularly travels to Missouri to pick up the parts. (W.W. Transport's Response, P. 4). Finally, Rick's Transit has been advertising in Missouri, through its sponsorship of race cars, since it was founded in 1987. (Id., P. 4, citing Deposition of Rick Ingalls, PP. 17-23). Upon consideration of the foregoing the Court finds that, viewing the allegations in the light most favorable to W.W. Transport, the nature, quality and quantity of Rick's Transit's contacts with Missouri were both continuous and beneficial to Rick's Transit, sufficient to give rise to general jurisdiction.

With respect to the secondary consideration of the forum's interest in the litigation, while Missouri does not have a significant interest in providing a forum to W.W. Transport, a non-resident, it does maintain an interest in this litigation, as several of the original Plaintiffs are Missouri residents[4], and the accident at issue took place in Missouri. Finally, while it may be more convenient for Rick's Transit to litigate this claim outside of Missouri, it does not appear to violate its due process rights to subject it to the jurisdiction of a nearby forum in which it regularly conducts a great deal of business. See Angelica, 904 F.Supp. at 997-98.

In light of the foregoing, the Court finds that Rick's Transit, "purposely availed itself of the privilege of conducting activity within Missouri," Angelica, 904 F.Supp. at 997 (internal quotations and citations omitted), so that the assertion of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir. 1991). Rick's Transit's Motion to Dismiss will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Rick's Transit's Motion to Dismiss Third-Party Plaintiff W.W. Transport, Inc.'s Third-Party Complaint pursuant to Rule 12(b)(2) (Doc. No. 28) is **DENIED**.

Dated this 17th day of October, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[4] Original Plaintiffs Laura Hall, Rick Hall, and Leeanett Phillips are all citizens of the state of Missouri. (Compl., ¶ 1).